[Crim. No. 2566. First Dist., Div. One. May 9, 1949.]

THE PEOPLE, Respondent, v. SYED SHAII, Appellant.

Kenneth Carlton Zwerin for Appellant.

Fred N. Howser, Attorney General, David K. Lener, Deputy Attorney General, Edmund G. Brown, District Attorney, and William B. Acton, Assistant District Attorney, for Respondent.

WARD, J.—Defendant appeals from a conviction of a felony: violating section 1, chapter 339, Statutes of 1923 (1 Deering's Gen. Laws, Act 1970). The information charged the defendant with carrying, concealed upon his person, a certain dirk or dagger.

On appeal it is urged that the evidence is insufficient to justify a conviction; that the district attorney was guilty of

misconduct; that the court failed to give certain instructions and erroneously left to the jury certain legal definitions; and that "the portion of the judgment imposing a fine in addition to a jail sentence, after probation has been denied, is illegal."

■ Two police inspectors testified that while riding in a radio car on the date mentioned in the information they saw defendant wearing a suit of light material, and that they could discern a long narrow object approximately 7 inches in length in defendant's right side pocket. Defendant admitted that the object was a knife. He was requested to enter the car. The article was taken from the pocket. It was a weapon often referred to as a dirk or dagger, of the spring type variety, that opens by pressing a button. It is described as if it has the appearance of a long pocket knife until the spring is pressed, when the blade springs to a stationary position until released. The jury's verdict indicates that it may not be classified as an ordinary knife, but an instrument that would be capable of inflicting death.

■ The defendant testified that he was taking money to a bank and that he needed the knife for protection. One of the officers testified that he had examined three or four hundred weapons, "not of this caliber, but of the same type"; that "This knife is constructed—it has a spring which will release this blade (indicating). There is a button on the side of the knife (indicating). When pressed, that blade will snap and stay open (illustrating). It is a fixed blade (indicating). It also has a lock where you release it; this particular knife you have to release it up on the top (illustrating). Most spring knives are built on the same type—not quite as elaborate—but it has a set lock, when you spring it open it will stay set, such as that. You can't shut that knife (indicating). Mr. Acton (for the prosecution): Q. I am going to ask you if you will close it, because I don't want anybody to get hurt. Just one more question, with your Honor's permission: At the time this knife was taken from the pocket of the defendant, was it opened in his presence? A. It was opened in his presence. It was closed while in his pocket, but when we removed it, we opened the knife. Q. Did you have any talk with him? A. At the time I personally asked Syed Shah, I said, 'You know you are not supposed to have this type of knife. I have warned you before.' He says, 'Yes, I know.' "

The district attorney sought thereafter to adduce testimony concerning previous conversations between the police officers and the defendant, and to introduce other knives taken

from the defendant. In each instance, when an objection was interposed, it was sustained. However, it appears that one of the inspectors gave the above-quoted testimony without objection.

Wrongful use of the weapon is not an element of the crime, although it may be of evidentiary significance under certain circumstances. Intent to use it as a deadly weapon is immaterial to the offense charged in the information. Carrying the weapon concealed upon the person is the gist of the offense, but in addition, the character of this weapon is concealed until a spring is pressed. Evidence as to knowledge of its nature and character would be admissible to show that carrying the weapon concealed was not justifiable or excusable. Under the facts as presented, the district attorney was not guilty of misconduct.

■ Objection is made that the trial court did not give certain stock instructions. If certain stock instructions are not applicable to the case there is no purpose in giving them. A fair example appears in the present case. The court instructed that the jury was the sole judge of the weight of the evidence and the credibility of the witnesses, on presumption of innocence and reasonable doubt, and on other matters essential to a determination of the guilt or innocence of the accused. The court did not state that the verdict must be founded upon evidence introduced in court. There was no necessity for such an instruction. The failure to give such an instruction may be coupled with the objection that the court refused to define a pocket knife. The definition of certain articles is a matter of common knowledge. It was not necessary to receive evidence, although none was offered, as to the definition of a pocket knife, or to define it in the instructions. Jurors are entitled to use their general knowledge when reference is made to articles commonly in use. (20 Am.Jur. § 28, p. 55.) The court was not required to instruct that evidence stricken from the record should not be considered. There was no evidence ordered stricken from the record. Several other trifling objections are made which do not merit discussion.

■ In the present case the court instructed: "Unless you believe to a moral certainty and beyond a reasonable doubt that the weapon found in the possession of the defendant comes within that definition, I instruct you that you must find the defendant not guilty. If you find beyond a reasonable doubt

that it does come within that definition, and that he carried it concealed upon his person, it is your duty to convict him." Defendant cites *Bivens* v. *State*, 133 Tex.Crim.Rep. 604 [113 S.W. 2d 921], which was reversed on the ground that the evidence failed to sustain the averments of the information. It appears that the weapon was not technically a dirk as alleged, but a bowie knife or dagger. In *People* v. *Ruiz*, 88 Cal.App. 502 [263 P. 836], the reviewing court affirmed a conviction on a count in an information for carrying a concealed weapon. The reviewing court stated at page 504: "A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a 'pocket-knife.' Dirk and dagger are used synonymously and consist of any straight· stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing. The word dagger is a generic term covering the dirk, stiletto, poniard, etc. (Standard Dict.) Each of the names given to the weapon properly described it. The weapon itself was in evidence and the jury was in a position to judge its character." The definition of the weapon in the present case, although given in shorter and more concise form, follows generally the instruction in the Ruiz case.

■ The usual claim is made that the court of its own motion should have given instructions on circumstantial evidence. It is claimed that if the use of the weapon was susceptible of two interpretations, one consistent with the weapon being deadly and the other that it was not deadly, the jury under the latter interpretation would be entitled to acquit. The weapon could be examined and its character determined by direct physical examination. It was not necessary to instruct the jury that if there were two inconsistent theories they could adopt the one favorable to the defendant. The words dirk and dagger were defined and the jury instructed that it must be found that the weapon was "fitted primarily for stabbing" and "capable of inflicting death" and "Unless you believe to a moral certainty and beyond a reasonable doubt that the weapon found in the possession of the defendant comes within that definition, I instruct you that you must find the defendant not guilty."

■ Defendant, after verdict of guilty, presented a motion for probation. The motion was denied. Upon conviction of the offense charged an accused may be imprisoned in the state prison or the county jail. In 1935, the act to control "fire-

arms capable of being concealed upon the person'' was amended to provide that any person who ''carries concealed upon his person any dirk or dagger, shall be guilty of a felony and upon a conviction thereof shall be punishable by imprisonment in the county jail not exceeding one year or in a State prison for not less than one year nor for more than five years; . . .'' (Stats, 1935, ch. 753, p. 2121.) No fine is enumerated. The court pronounced judgment sentencing the defendant to 10 days in the county jail plus a fine of $200. Penal Code, section 672 provides: ''Upon a conviction for any crime punishable by imprisonment in any jail or prison, in relation to which no fine is herein prescribed, the court may impose a fine on the offender not exceeding two hundred dollars, in addition to the imprisonment prescribed.'' Defendant contends that section 672 applies only to offenses enumerated in the Penal Code. The section uses the words ''any crime'' which is broad enough to include all crimes, whether denounced in the Penal Code or by special statutory enactment. In *Doble* v. *Superior Court*, 197 Cal. 556, at page 565 [241 P. 852], the court stated: ''We are of the opinion it was the legislative intention that the words 'any crime' should include all crimes —whether felonies or misdemeanors—which are known to the law of this state and whether defined and made punishable by the Penal Code or by any other law or statute of the state.''

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied May 24, 1949, and appellant's petition for a hearing by the Supreme Court was denied June 2, 1949.