[Crim. No. 11199.   In Bank.   Oct. 13, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK EUGENE FORREST, Defendant and Appellant.

Gary C. Britton, Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Don Jacobson, Deputy Attorneys General, for Plaintiff and Appellant.

PETERS, J.—Defendant appeals from a judgment granting him probation after conviction for carrying a concealed "dirk or dagger" in violation of section 12020 of the Penal Code, which makes the offense a felony. The sole question involved is whether the weapon defendant was carrying, an oversized pocketknife, is a "dirk or dagger" within the meaning of that code section. We have concluded that it was not, and for that reason the judgment must be reversed.

The facts are not contradicted.

Defendant and several other motorcyclists were stopped by officers of the California Highway Patrol for various equipment violations. Defendant was cited for such a violation. As he opened his jacket to obtain his driver's license, the officer noticed a knife handle sticking out of his right front pants pocket. The knife was an oversized pocketknife with its blades folded into the handle. Both officers testified that defendant's closed jacket covered the knife. He was charged and convicted of carrying a concealed "dirk or dagger."

The knife involved, as already indicated, is constructed like an ordinary pocketknife, but is much larger. It contains two blades, one large and one small. They both fold into the handle like an ordinary pocketknife. The long blade is about 6 inches in length measured from the tip of the blade to the handguard. It, like many ordinary pocketknife blades, is narrow and pointed at the tip, and only one edge is sharpened. When opened like an ordinary pocketknife, the blades do not lock into place. Near the base of the larger blade and on the handle there are two small handguards. The handle is 8 inches in length.

Is this oversized knife a "dirk" or a "dagger" as these terms are used in section 12020 of the Penal Code? That section provides in part: "Any person . . . who carries concealed upon his person any dirk or dagger, is guilty of a felony, . . ."

The statute does not define a "dirk or dagger" but a consideration of other sections of the code and the available case law indicates that, as a matter of law, a folding knife of the type here involved is not a dirk or dagger. Thus section 3024 of the Penal Code, which increases the minimum punishment for certain felonies when in the commission of the felony or at the time of arrest the felon is armed with a deadly weapon, or has such concealed upon his person, defines the term "deadly weapon" to include "any dirk, dagger . . . any knife having a blade longer than five inches. . . ." Obviously, if by the terms "dirk" and "dagger" the Legislature has intended to encompass all knives, the further reference to knives would have been unnecessary. Thus, here at least, the Legislature indicated that the terms "dirk" and "dagger" did not include all knives.

The courts have only applied the section to instruments where the blades and handle are solid, or where the blade locks into place. Thus, in *People* v. *Ruiz,* 88 Cal.App. 502, 504 [263 P. 836], it was properly held that a bayonet with part of it filed off was a dagger. The court said: "A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a 'pocket-knife.' Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing. The word dagger is a generic term covering the dirk, stiletto, poniard, etc. (Standard Dict.)"

In *People* v. *Shah,* 91 Cal.App.2d 716, 720 [205 P.2d 1081], this language was quoted with approval and the court held that a spring blade knife was a dagger because the blade locked into place. But even as to such a knife the Legislature has now excluded the spring blade knife from the felony section by adopting in 1957 section 653k to the Penal Code making it a misdemeanor to carry a concealed switchblade knife, and by its definition of a switchblade knife included spring blade knives. (Stats. 1957, ch. 355, p. 999.)[1]

Dirks or daggers were originally used in dueling and required blades locked into place to be effective. They are weapons designed primarily for stabbing. (Webster's Third New Internat. Dict. (1961) pp. 570, 642; 6 Encyclopaedia

---

[1]This section was again amended in 1959 to delete the requirement that the knife be concealed. (Stats. 1959, ch. 355, p. 2278.)

Brittanica (1954) p. 972; Peterson, American Knives (1958) p. 2.) This knife is not primarily designed for stabbing.

Although the large blade in the knife involved here is pointed and to a minor extent tapered, the knife folds like a pocketknife, and the blade of the knife when opened does not lock into place. This severely limits its effectiveness as a stabbing weapon, because if the blade should hit a hard substance such as a bone, there is grave danger that the blade would close upon the hand of the wielder. This distinguishes it from a dirk or dagger. It was not designed primarily for stabbing. Therefore, as a matter of law, it is not a dirk or dagger as these terms are used in the statute.

The Attorney General, pointing to the size of the blade, the beveled portion of the front of the blade, and the handguards, urges that this is a question of fact, and that the jury could properly find that the character of the knife is that of a stabbing weapon since it is obviously capable of inflicting death. However, the fact that the weapon can be used as a stabbing weapon and is capable of inflicting death is not determinative. Most knives, or even most pointed scissors, can be used to stab and are capable of inflicting death. Knives are ordinarily designed to be used as weapons or tools or both, and as weapons they may be designed as stabbing or cutting instruments or as both. The fact that the knife is large, part of its blade is beveled, and its handle contains handguards is not determinative where, as here, the absence of a lock on the blade so greatly limits its effectiveness as a stabbing instrument. In other words, when a knife which, like other pocketknives, has many possible uses, some of which are clearly innocent and utilitarian, also has a characteristic which in many situations will substantially limit the effectiveness of its use as a stabbing instrument, it cannot be held to be a weapon primarily designed for stabbing, and thus is not a dagger or dirk.

Thus the Legislature has not included folding pocketknives within the meaning of ''dirk or dagger.'' No matter how lethal the instrument may be we cannot hold its concealed possession is a crime unless the Legislature has so provided. Chief Justice Traynor succinctly stated the applicable rule in his dissenting opinion in *People* v. *Hallner*, 43 Cal.2d 715, 723 [277 P.2d 393], as follows: ''[W]e cannot create an offense that the Legislature failed to create. We must assume that the Legislature meant the section to be read as it was written,

however unwise we may think the Legislature was in not creating an offense that we may think should have been created. We cannot create such an offense by enlarging the statute, or by inserting or deleting words, nor should we do so by giving a false meaning to its words. [Citations.] Such a practice makes it impossible for anyone to rely on the written word of the Legislature and only adds confusion to the already difficult task of drafting statutes.''

The judgment is reversed.

Traynor, C. J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

MOSK, J.—I dissent.

Statutes prohibiting possession of what are broadly designated as dangerous or deadly weapons are not uncommon. In that category have been placed weapons which in their intended or readily adaptable use are likely to produce death or serious bodily injury. As this court stated in *People* v. *Grubb* (1965) 63 Cal.2d 614, 620 [47 Cal.Rptr. 772, 408 P.2d 100] : ''The Legislature obviously sought to condemn weapons common to the criminal's arsenal. . . . The Legislature's understandable concern with the promiscuous possession of objects dangerous to the lives of members of the public finds manifestation in section 12020.'' In *Grubb* this court held that the prohibition against possession of a billy included those objects comparable to a billy and readily susceptible of criminal use.

The word ''dagger'' is also a generic term, covering the dirk, stiletto, poniard, etc. (Words and Phrases, p. 418; *People* v. *Ruiz* (1928) 88 Cal.App. 502 [263 P. 836] ; *People* v. *Shah* (1949) 91 Cal.App.2d 716 [205 P.2d 1081].) ''Dagger'' is not susceptible of exact definition, or at least has not been defined in the statute with precision, nor have the other prohibited instruments : blackjacks, slung shots, sandclubs, sandbags, metal knuckles. (Pen. Code, § 12020.)

The absence of a mathematically precise definition of a dagger in terms of locking in place, straightness, length, width, tapering, etc., suggests the Legislature was unwilling or unable to predict developing refinements in the macabre art of weaponry. It sought, by the use of generic terms, to proscribe weapons ''common to the criminal's arsenal,'' and left to the trier of fact to ascertain whether a seized object comes within the category of contraband.

A trial judge and three appellate court justices examined the instrument involved in this case. They could have found it to be merely a long knife adaptable for such lawful purposes as stripping a deer or fileting a halibut. Instead they found this chilling lethal weapon to be a ''dirk or dagger'' as those terms are used in section 12020 of the Penal Code. This was a factual determination.

Without citing any authority, the majority propound a rule that, as a matter of law, an object cannot be a dagger if it folds like a pocketknife. I would hold that whether an instrument is a dirk or dagger is purely and simply a question of fact, and that the determination here should not be disturbed on appeal.

The judgment should be affirmed.

McComb, J., concurred.